IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALLAN JENKINS,

    Plaintiff,

v.                                               Civil Action No. 2:14cv526

INT'L ASS'N OF BRIDGE, STRUCTURAL,
ORNAMENTAL & REINFORCING
IRONWORKERS LOCAL NO. 79
PENSION FUND et al.,

    Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants' Partial Motion to Dismiss Amended Complaint ("Motion to Dismiss"), Doc. 16, Defendants' Motion to Modify Rule 26(f) Pretrial Order ("Rule 26(f) Motion"), Doc. 24, and Defendants' Motion for Protective Order, Doc. 27. This is Defendants' second Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(5) respectively. See Doc. 7. Defendants' first Motion to Dismiss was never addressed by this Court as Plaintiff instead opted to file the Amended Complaint. Doc. 12. A hearing was held to address all pending motions on Thursday, March 19, 2015 at 2:30 p.m., and the Court ruled from the bench as follows:

As to Defendants' Motion to Dismiss, the Court **GRANTED** the Motion **IN PART** and herein **DENIES** the Motion **IN PART**.

The Court **DISMISSED WITHOUT PREJUDICE** Count One of the Amended Complaint only as to individual Defendants Thomas Bell, Tony W. Crosby, William B. Kuhlman, and Brian S. Olson.

The Court **DISMISSED WITHOUT PREJUDICE** Count Two of the Amended Complaint as to all Defendants. As such, individual Defendants Thomas Bell, Tony W. Crosby, William B. Kuhlman, and Brian S. Olson are **DISMISSED** from this case **WITHOUT PREJUDICE.**

The Court **DENIES** as **MOOT** Defendants' Motion to Dismiss in so far as it seeks the dismissal of the Amended Complaint as to Tony W. Crosby under Rule 12(b)(5).

The Court **GRANTED** Plaintiff **LEAVE TO AMEND** his Amended Complaint, Doc. 12, to allege a claim for health benefits against the Local No. 79 Health Fund within eleven (11) days of the hearing, if he is inclined to do so. If so inclined, Defendants **SHALL** have eleven (11) days to respond to the newly amended complaint.

As to Defendants' Rule 26(f) Motion, the Court **WITHHELD** ruling pending further briefing by the parties. The parties were **ORDERED** to submit briefs on the issue of standard of review. Defendants were provided fifteen (15) days from the date of the hearing to file their initial brief. Plaintiff was provided eleven (11) days to file a response, and Defendants were provided three (3) days thereafter to file a rebuttal.

As to Defendants' Motion for Protective Order, the Court **DENIED** the Motion and declines to enter a protective order at this time. The Court **PERMITTED** discovery in the areas outlined by Plaintiff's counsel at the March 19, 2015 hearing, and such discovery is permissible under either applicable standard of review. As such, the permitted discovery **SHALL** run concurrently with the parties briefing deadlines regarding the applicable standard of review.

The Court now issues this Opinion and Order explaining its reasoning and detailing its rulings.

## I. BACKGROUND

### A. Factual Allegations

This is an action for recovery of benefits and equitable relief under the Employee Retirement Income Security Act ("ERISA"). Plaintiff was a member of the International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers Local No. 79 ("Local 79") labor organization from 1974 until 2013. Am. Compl. at 3. Plaintiff was a participant in Local 79's pension benefit plan ("Pension Plan") at all times during his membership in the organization. Id. On July 1, 2008, Plaintiff took early retirement under the Pension Plan, which permitted him to work full-time for five years while still receiving benefits. Id. Before those years expired, the Pension Plan was amended to discontinue eligibility for retirement benefits for those, such as Plaintiff, who continued to work full-time. Id. As such, Plaintiff stopped receiving retirement benefits in March 2011. Id.

Plaintiff continued to work full-time subject to a collective bargaining agreement ("CBA") between Local 79 and the Virginia Association of Contractors, Inc., as well as the Pension Plan, until April 1, 2013. His employers continued to make contributions to the Pension Plan during that time. Id. at 3, 4. From April 1, 2013 forward, Plaintiff worked part-time for a new employer that was not subject to the CBA, and accordingly, all further contributions for pension benefits under the Pension Plan ceased. Id. at 4. Plaintiff applied for benefits under the Pension Plan, in accordance with ERISA requirements, around April 1, 2013. Id. Defendants', however, denied Plaintiff benefits under the Pension Plan, stating that he was engaged in disqualifying work. Defendants' denied Plaintiff's appeal. Id. Plaintiff has exhausted all administrative remedies in regards to the Pension Plan and appeals to this Court for relief.

### B. Procedural History

Plaintiff has made two claims against Defendants. Count One of the Amended Complaint seeks benefits wrongfully denied pursuant to 29 U.S.C. § 1132(a)(1)(B) ("Section 1132(a)(1)(B)"), and Count Two seeks equitable remedies pursuant to 29 U.S.C. § 1132(a)(3) ("Section 1132(a)(3)"). Id. at 5. This matter was referred for a Rule 16(b) Scheduling Conference on November 19, 2014, and the Amended Complaint was filed on December 1, 2014. Doc. 12. On December 18, 2014, Defendants' filed their Motion to Dismiss. Doc. 16. Two days before the Scheduling Conference, Defendants' filed the Rule 26(f) Motion, Doc. 24, stating, in essence, that discovery and trial are inappropriate in this case as Plaintiff's claims are brought under Section 1132(a)(1)(B) of ERISA. Id. at 1.

While the Rule 26(f) Motion was pending, the February 27, 2015 deadline for Defendants to object to Plaintiff's discovery was looming, so Defendants filed the Motion for Protective Order to postpone discovery deadlines until after the Court rules on the Rule 26(f) Motion and relieve them from all future discovery obligations beyond the administrative record. Doc. 27 at 2. A hearing was held on Thursday March 19, 2015 at 2:30 p.m, and each Motion was addressed in turn.

### II. MOTION TO DISMISS

### A. Procedural History

In their Motion to Dismiss, Defendants sought (1) dismissal of Count One pursuant to Rule 12(b)(6) as to individual Defendants Thomas Bell, Tony W. Crosby, William B. Kuhlman, and Brian S. Olson ("Trustees"); (2) dismissal of Count Two pursuant to Rule 12(b)(6) as to all Defendants; and (3) dismissal of Counts One and Two pursuant to Rule 12(b)(5) as to Defendant

Tony W. Crosby for lack of service of process.[1] As to Count One, Defendants alleged that "[t]he Fourth Circuit has adopted the position that only the plan itself or a party with control over the administration of the plan is a proper defendant under § 1132(a)(1)(B)." Doc. 17 at 3. As to Count Two, Defendants alleged that it is merely "an attempt to recast a claim for benefits" as an equitable claim under Section 1132(a)(3), which is improper if the relief sought can be redressed by Section 1132(a)(1)(B). Id. at 5–7.

In response to the first claim, Plaintiff contended that because the "Trustees are fiduciaries under the Plan, are the sole individuals empowered to make rules and prescribe procedures for the administration of the Plan, and have the final decision-making authority as to the administration of the Plan," they are proper Defendants. Doc. 20 at 1–2. In response to the second claim, Plaintiff alleged that the relief sought under Section 1132(a)(3), prejudgment interest, restitution for lost retiree health benefits, and other make whole relief, is different than the relief sought under Section 1132(a)(1)(B), and therefore, proper. Doc. 20 at 5; Am. Compl. at 5. Each claim shall be addressed in turn.

## B. Legal Standards

*i. Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

---

[1] In their Memorandum in Support of Defendants' Partial Motion to Dismiss Amended Complaint, Doc. 17, Defendants admit that "120 days has not lapsed since summonses were issued, but raise this argument now to avoid any possibility of waiver at a later date." Doc. 17 at 8, n.3. Defendant Crosby, however, was timely served on January 10, 2015. Doc. 23. This issue is, therefore, moot.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (1990)). The Court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

*ii. Motion to Dismiss for Insufficient Service of Process*

A Rule 12(b)(5) motion to dismiss for insufficient service of process permits "the defendant to challenge departures from the proper procedure for serving the summons and complaint." 5B Charles A. Wright, Arthur R. Miller, et al., Fed. Prac. & Proc. Civ. § 1353 (3d ed. 2014). Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

**B. Analysis**

*i. Dismissing the Individual Trustees as to Counts One and Two*

The United States Court of Appeals for the Fourth Circuit has not definitively addressed ERISA claims brought against Trustees in their individual capacity. Although the Fourth Circuit

6

has provided some general guiding principles, this particular matter appears to be an issue of first impression.

To begin, Section 1102 of ERISA states that every benefits plan "shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Furthermore, 29 U.S.C. § 1132(d)(2) ("Section 1132(d)(2)") states, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." Accordingly, "[u]nder ERISA the defendants cannot be held personally liable for money damages absent a showing of individual misconduct. See 29 U.S.C. § 1132(d)(2) (2000). This, however, does not preclude a court from providing plaintiffs with declaratory and injunctive relief if the defendants breached their fiduciary duties." Keegan v. Steamfitters Local Union No. 420 Pension Fund, 174 F. Supp. 2d 332, 340 (E.D. Pa. 2001).

"To state a claim for breach of fiduciary duty under ERISA, the plaintiff must allege: (1) that the defendant was a fiduciary, (2) who was acting within his fiduciary capacity, and (3) breached his duty." Guardian Life Ins. Co. of America v. Reinaman, No. WDQ-10-1374, 2011 WL 2133703, at *7 (D.Md. May 26, 2011) (quoting Cuthie v. Fleet Reserve Ass'n, 743 F.Supp.2d 486, 494 (D.Md. 2010)) (internal quotation marks omitted). According to the United States District Court for the District of Connecticut,

> ERISA imposes "a number of detailed duties and responsibilities" on those who are—or who function as—fiduciaries, the breach of which gives rise to personal liability under the statute. Mertens, 508 U.S. at 251, 113 S.Ct. 2063. As relevant here, an ERISA fiduciary has (1) a duty of loyalty, which requires that he "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A); and (2) a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

7

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B).

Haddock v. Nationwide Fin. Servs., Inc., 293 F.R.D. 272, 283 (D. Conn. 2013). In the current matter, Plaintiff is <u>not</u> claiming breach of fiduciary duty by any individual Defendant, <u>nor has Plaintiff alleged</u> facts to support the notion that such a breach occurred.

In Gluth v. Wal-Mart Stores, Inc., No. 96-1307, 1997 WL 368625 (4th Cir. July 3, 1997) (per curiam), a case in which the Fourth Circuit has addressed the issue of proper defendants in ERISA actions, the plaintiff sued "Wal-Mart Group Health and Welfare Trust" ("The Trust"), as well as the pertinent group health plan, when he was denied medical coverage after an emergency surgery. Id. at *1. On appeal, the Fourth Circuit dismissed The Trust as a defendant, stating that because The Trust was only the funding mechanism for the plan and had no control over the actual administration of the plan, it was not a proper defendant in the action. Id. at *6. Furthermore, the Court noted

> that Gluth named the wrong defendant from the beginning by initially bringing this action against his employer, Wal–Mart, who had no control over the administration of the Plan. *See Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.1988) (unless an employer is shown to control administration of an employee benefit plan, it is not a proper defendant in an ERISA action seeking benefits; rather, the plan is the proper party).

Id. at *6, n.8. Gluth was distinguished by Clark v. Nationwide Mutual Ins. Co., 933 F. Supp. 2d 862, 872 (4th Cir. 2013), in which the Fourth Circuit held that Nationwide, even though not the named plan administrator, was a proper defendant in a Section 1132(a)(1)(B) action because Nationwide appeared "to have had adequate control over Clark's claim to justify being named as the defendant."

Defendants argued that, in light of Gluth, the only proper defendants are the Pension Plan and Board of Trustees because the Pension Plan itself states, "[t]he Plan shall be administered by

8

the Trustees, who are fiduciaries under this Plan," Compl. at 1, Ex. 1 § 11.1,[2] and "[t]he term 'Trustees' shall mean the Employer Trustees and the Union Trustees, collectively, who have been appointed in accordance with the provisions of the Trust Agreement to serve thereunder," id. § 1.34. Doc. 17 at 4. Plaintiff contended that the individual Trustees are proper Defendants because they are the Trustees referred to under the Pension Plan, and in turn, fiduciaries who control benefits decisions. Doc. 20 at 4. Plaintiff is relying on the Fourth Circuit's "adequate control" principle as set forth in Nationwide, but has not alleged facts sufficient to support such a claim.

Firstly, Plaintiff has sued the Trustees in their individual capacity and not as administrators or fiduciaries under the Pension Plan. This tends to neutralize Plaintiff's argument that the individual Trustees are proper defendants because they are acting as fiduciaries when he is not claiming they breached any specific fiduciary duty. Based on a reading of Section 1132(d)(2), as well as case law from other circuits, this is not proper absent a showing of individual misconduct, i.e., breach of a fiduciary duty. Plaintiff has not claimed breach of fiduciary duty here. Secondly, Plaintiff has not made a showing that any of the individual Trustees, as opposed to the collective "Board of Trustees,"[3] had adequate control over the Pension Plan such that this matter would fall under the principles of Nationwide.[4] The Pension

---

[2] The Exhibits contained in the Complaint, Doc. 1, were incorporated by reference in the Amended Complaint, Doc. 12.

[3] Although the Pension Plan uses the terminology "Employer Trustees and the Union Trustees, collectively" as opposed to the term "Board of Trustees," both in their briefs and during the respective hearing Defendants refer to this body as the "Board of Trustees" and concede that the "Board of Trustees" is the administrator of the Pension Plan and a proper party to the Section 1132(a)(1)(B) action.

[4] In Nationwide, the Fourth Circuit held that, even though not the official plan administrator, when Nationwide staffing forms were used to summarize the benefits denial, Nationwide employees were involved in the benefits decisions, Nationwide employees controlled the plaintiff's benefits file, and the Nationwide logo and Nationwide letterhead were used in communications with plaintiff regarding the benefit's decision, Nationwide appeared "to have had adequate control over Clark's claim to justify being named as the defendant." 933 F.Supp.2d at 871–72.

Plan clearly states it is to be administered by the Trustees in their collective capacity. It does not provide for individual administration. Defendants' admitted that both the Board of Trustees and the Pension Plan are proper Defendants to this action, but challenge the sufficiency of the complaint as to the individual Trustees.

As a matter of law, Section 1132(d)(2) prohibits holding an individual defendant personally liable for money damages absent a showing of individual misconduct. Accordingly, Plaintiff has not plead facts sufficient to state a claim for relief as to the individual Trustees in either Counts One or Two. For this reason, the Court **GRANTED** Defendants' Motion to Dismiss, **DISMISSING WITHOUT PREJUDICE** individual Defendants Thomas Bell, Tony W. Crosby, William B. Kuhlman, and Brian S. Olson from the present action.

*ii. Dismissing Count Two as to all Remaining Defendants*

"Individualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 102 (4th Cir. 2006); see also Varity Corp. v. Howe, 516 U.S 489, 515 (1996). According to the Fourth Circuit in Korotynska,

> the great majority of circuit courts have interpreted Varity to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3) . . . These courts have not allowed claimants to proceed with § 1132(a)(3) claims where relief was potentially available to them under § 1132(a)(1)(B), because, in Varity, "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." Wilkins, 150 F.3d at 615. A plaintiff whose injury consists of a denial of benefits "has adequate relief available for the alleged improper denial of benefits through his right to sue [the benefit plan] directly under section 1132(a)(1)," and thus "relief through the application of Section 1132(a)(3) would be inappropriate." Tolson, 141 F.3d at 610. To allow a claim under § 1132(a)(3) would permit "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." Wilkins, 150 F.3d at 616. We join our sister circuits . . . .

474 F.3d at 106–07. Nonetheless, if a plaintiff is alleging alternate theories of recovery, some district courts have held he may be able to proceed under both Section 1132(a)(1)(B) and Section 1132(a)(3) if the injuries are distinct and the plaintiff is not seeking to "repackage" a benefits claim. See Guardian Life, 2011 WL 2133703, at *9; England v. Marriott Int'l., Inc., 764 F. Supp. 2d 761, 779 (D.Md. 2011). Korotynska, however, is the controlling case in this Circuit.

In light of these principles, Plaintiff alleged he is entitled to the following equitable relief that is "not recoverable under the terms of the Plan:" (1) prejudgment interest on the benefits withheld; (2) restitution for lost retiree health benefits; and (3) other make whole relief. Doc. 12 at 5. The first two claims will be addressed in turn to determine if relief is recoverable under Section 1132(a)(3). In regards to the third claim for "other make whole relief," Plaintiff has plead no factual matter in support of the relief sought. It is a mere recital, and as such, will not survive Defendants Rule 12(b)(6) Motion on its own accord.

Firstly, Plaintiff claims he is entitled to prejudgment interest on the potentially recoverable pension benefits of $2,722.50 per month under Section 1132(a)(3). Id. In Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1030–31 (4th Cir. 1993), the Fourth Circuit stated that because ERISA does not provide for prejudgment interest, the district court can exercise discretion in awarding such in order to compensate a plaintiff for loss of his pension funds. As a matter solely within the discretion of the Court, a request for prejudgment interest cannot be categorized as an individual claim for equitable relief when it can be adequately redressed by Section 1132(a)(1)(B). If Plaintiff succeeds in recovering benefits under Section 1132(a)(1)(B), the Court may award prejudgment interest. As such, as a matter of law, prejudgment interest is available under ERISA's other provisions and **CANNOT** sustain an individual claim brought under Section 1132(a)(3).

Secondly, Plaintiff seeks "restitution for lost retiree health benefits" and pleads as follows: "but for Defendants wrongful denial of benefits, Plaintiff would be receiving retiree health benefits under the Local No. 79 Health Fund . . . As a result of Defendants' wrongful denial of pension benefits to Plaintiff, Plaintiff is not eligible for and is not receiving health benefits . . . ." Am. Compl. at 5. Accepting this statement as true, the Court must determine if Plaintiff has made a plausible claim for relief under Section 1132(a)(3). "[G]enerally a claimant must exhaust the administrative remedies provided in an employee benefit plan before prosecuting an ERISA claim in federal court. . . However, a 'clear and positive' showing that such exhaustion would be futile will circumvent this requirement." DuPerry v. Life Ins. Co. of North America, 632 F.3d 860, 875 (4th Cir. 2011) (citations omitted).[5]

Plaintiff has not alleged he exhausted the administrative remedies available to him regarding Local No. 79's Health Fund ("Health Fund"), and Defendants claim the proper approach would have been for Plaintiff to exhaust his administrative remedies under the Health Fund and, if denied, seek redress for denial of benefits under Section 1132(a)(1)(3). Doc. 21 at 3–4. Plaintiff, however, is essentially contending that such actions would have been futile because, once denied pension benefits, Plaintiff is no longer eligible to receive benefits under the Health Fund. Am. Compl. at 5. Again, accepting these facts as true, the questions now become (1) whether such relief can be granted by the named Defendants and (2) whether such relief can be obtained through Section 1132(a)(3).

According to Defendants, Plaintiff has sued the wrong plan. Doc. 21 at 3. If he is seeking lost health benefits then the proper Defendant is the Health Fund, not the Pension Plan. Id. Should Plaintiff's Section 1132(a)(1)(B) claim prove successful, he would be entitled to the

---

[5] It is important to note, however, that the above-referenced standard announced in DuPerry was laid down in response to an action filed under Section 1132(a)(1)(B), not Section 1132(a)(3).

<u>pension</u> <u>benefits</u> wrongfully denied him and, in theory, the opportunity to apply for and receive health benefits under the Health Fund. The Health Fund, however, would be permitted to deny Plaintiff health benefits under the terms of the Health Plan so long as Plaintiff was not receiving pension benefits. For this reason, Plaintiff is seeking <u>restitution</u> for those health benefits he would have been receiving were it not for the denial of pension benefits at issue in the Section 1132(a)(1)(3) claim.

In summary, Plaintiff's logic was as follows: (1) applying for health benefits under the Health Fund would have been futile because Plaintiff had already been denied pension benefits under the Pension Plan, which has substantial bearing on Health Fund decisions; (2) by filing a claim against the Health Fund for denial of benefits under Section 1132(a)(1)(B), Plaintiff would have to clearly prove futility because the Health Fund would have defended on the ground that Plaintiff never exhausted its administrative remedies, and more importantly, Plaintiff would not have been entitled to those benefits under the very terms of the health plan so long as he was not receiving pension benefits; as such, (3) Plaintiff filed the instant action seeking restitution for lost health benefits under Section 1132(a)(3) from the Pension Plan as a means of circumventing what would have been the traditional approach, to exhaust all administrative remedies (or prove futility) and bring a claim against the Health Fund under Section 1132(a)(1)(B).

In unraveling this web, the Fourth Circuit's reasoning in <u>Korotynska</u> provides substantive guidance. In <u>Korotynska</u>, the Fourth Circuit states,

> [i]t may be that plaintiff perceives in § 1132(a)(3) a clearer path to § 1132(a)(1)(B) relief while possibly circumventing § 1132(a)(1)(B)'s standard of review of abuse of discretion. But <u>Varity</u> allows equitable relief when the available remedy is inadequate, not when the legal framework for obtaining that remedy is, to the plaintiff's mind, undesirable.

474 F.3d at 108. Plaintiff seems to be doing exactly this, circumventing review under Section 1132(a)(1)(B) by bringing an equitable claim for relief in this matter under Section 1132(a)(3). The Fourth Circuit makes clear, however, that when another remedy is available under ERISA, i.e., exhausting administrative remedies before, or proving futility after, bringing a claim for relief under Section 1132(a)(1)(B), equitable claims under Section 1132(a)(3) are not appropriate. The proper approach carved out for plaintiffs who find themselves in such situations is to rely on the futility exception for claims brought pursuant to Section 1132(a)(1)(B) and allow the Court, viewing the claims holistically, to determine if benefits had been or would have been wrongfully denied.

If Plaintiff believes it will be futile to apply for health benefits under the Health Fund upon denial of his pension benefits, then he may utilize the futility exception and join the Health Fund as a defendant under the Section 1132(a)(1)(B) claim. Plaintiff's claims for equitable relief under Section 1132(a)(3) are simply "repackaged" denial of benefits claims against the Health Fund, and therefore, not properly before this Court. Plaintiff cannot circumvent Section 1132(a)(1)(B) by bringing what amounts to a denial of benefits claim under Section 1132(a)(3). The Court in <u>Korotynska</u> anticipated Plaintiff's actions here, and as such, this Court **GRANTED** Defendants' Motion as to Count Two, **DISMISSING** the claim **WITHOUT PREJUDICE** as to all parties but **WITH LEAVE TO AMEND** the Amended Complaint, Doc. 17, to allege a claim for health benefits against the Health Fund within eleven (11) days of the hearing, if he is inclined to do so. If so inclined, Defendants **SHALL** have eleven (11) days to respond to the newly amended complaint.

*iii. Dismissal of the Amended Complaint as to Defendant Tony W. Crosby pursuant to Rule 12(b)(5)*

Defendants admitted that, at the time they filed their Motion to Dismiss, 120 days had not elapsed since the summons was issued as to Defendant Crosby, but that they were including the argument so as to avoid possible waiver at a later date. Doc. 17 at 8, n.3. Defendant Crosby was timely served on January 10, 2015. Doc. 22. As such, Defendants' third claim for lack of service of process under Rule 12(b)(5) is **DENIED** as **MOOT**.

### III. RULE 26(f) MOTION & MOTION FOR PROTECTIVE ORDER

#### A. Procedural History

Two days before the Rule 16(b) Scheduling Conference, Defendants' filed their Rule 26(f) Motion, stating in essence, that discovery and trial are inappropriate in this case as Plaintiff's claims are brought under Section 1132(a)(1)(B) of ERISA. Doc. 24 at 1. Defendants requested that a briefing schedule for summary judgment motions based only on the administrative record instead be established. Id. Defendants, however, had not yet produced the administrative record in the case. Plaintiff contended that discovery and trial were proper because there are disputed issues of fact requiring adjudication by the fact-finder. Doc. 26 at 4. While the Rule 26(f) Motion was pending, Defendants filed the Motion for a Protective Order requesting the Court postpone discovery deadlines until after it ruled on the Rule 26(f) Motion and relieve them from all future discovery obligations beyond the administrative record. Doc. 27 at 2.

#### B. Legal Standards

"As an initial matter, the Court must address the standard of review to be applied to a claim of wrongful denial of benefits under ERISA because 'the scope or availability of discovery is tied to the standard of review applied.'" Bruce v. Hartford, 21 F.Supp.3d 590, 594 (E.D.Va.

15

2014) (quoting Bartel v. Sun Life Assurance Co. of Canada, 536 F.Supp.2d 623, 627 (D.Md. 2008)); *see also* Woods v. Prudential Ins. Co. of America, 528 F.3d 320, 321 (4th Cir. 2008). Firstly, the Court must review de novo the language at issue in the ERISA plan to determine if the plan administrator was vested with the necessary discretion to grant or deny an application for benefits. Id. at 595. "[A] denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary *discretionary* authority to determine eligibility for benefits or to construe the terms of the plan." Woods, 528 F. 3d at 322 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)) (emphasis added) (internal quotation marks omitted). The Fourth Circuit has held that an ERISA plan can confer discretionary authority in one of two ways: "(1) by language which 'expressly creates discretionary authority,' and (2) by terms which 'create discretion by implication.'" Id. (quoting Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522-23 (4th Cir. 2000)). If the grant of discretion is not clear, then the Fourth Circuit requires a de novo standard of review. Id.

In Woods, the Fourth Circuit held that language which simply confers the administrator authority to make "determinations" regarding eligibility is not sufficient to put the employee on notice "'that the plan administrator is to make a judgment largely insulated from judicial review'." Id. (quoting Herzberger v. Standard Ins. Co., 205 F.3d 327, 332 (7th Cir. 2000)). The relevant contractual phrases at issue in Woods were "when Prudential determines" and "determined by Prudential." Id. (internal quotation marks omitted). Here, the court made clear that a grant of authority to make *determinations* regarding eligibility, which is a necessary part of the administrative process, is not akin to a grant of *discretionary* authority. Id. This language was not considered sufficient to trigger the abuse of discretion standard, and the court required de novo review. Id. at 324

When the standard of review for Section 1132(a)(1)(B) claims is de novo, the Fourth Circuit has adopted a "limited discretionary approach" to discovery outside of the administrative record. Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir. 1993). This Circuit "permits the district court in its discretion to allow evidence that was not before the plan administrator . . . only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Id. In Quesinberry, the Court provided a list of examples that might warrant the introduction of additional evidence, such as "the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts." Id. at 1027. Furthermore, "in determining whether to grant such a motion, the district court should address why the evidence proffered was not submitted to the plan administrator." Id. The Fourth Circuit, however, made clear that the introduction of additional evidence in such cases was not required, but rather permissible if the requisite necessity is established. Id.

If it is found that the contractual language in a benefits plan is sufficient to confer discretionary authority on the administrator to determine eligibility or construe terms, then the applicable standard of review is abuse of discretion. Firestone, 489 U.S. at 115. "In the Fourth Circuit, discovery is generally not available in ERISA cases where the district court reviews the administrator's decision for abuse of discretion." Stanley v. Metropolitan Life Ins. Co., 312 F. Supp.2d 786, 789 (E.D.Va. 2004). However, this is not an absolute bar to admissibility. The Fourth Circuit has recognized the following general exceptions: (1) When there is a conflict of interest such as "where the plan administrator 'both evaluates claims for benefits and pays benefits claims...'," Bruce, 21 F.Supp.3d at 595 (quoting Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008)); (2) when the Court is evaluating what information was known to the

administrator in rendering his or her decision as opposed to what was contained in the record, Helton v. AT&T Inc., 709 F.3d 343, 352 (4th Cir. 2013); and (3) when additional information is necessary for the Court to properly evaluate and balance the non-exhaustive list of factors set forth in Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 342–43 (4th Cir. 2000), such as "... (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; . . . (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." Discovery is permissible under either applicable standard of review if necessary to properly evaluate the Booth factors.

### C. Analysis & Conclusion

*i. Rule 26(f) Motion*

In their Rule 26(f) Motion, Defendants have put the proverbial cart before the horse. In the Motion they, without any reference to or discussion regarding the matter, assume an abuse of discretion standard of review. Doc. 24; Doc. 25. This assumption is premature, as the language at issue in the present contract states only that "[t]he Trustees shall make a determination as to the right of any person to a benefit." Compl. at 49, Ex. A at 44. Until the proper standard of review is determined, Defendants' Rule 26(f) Motion is not ripe for review. Accordingly, the Court **WITHHELD** ruling on Defendants Rule 26(f) Motion pending further briefing by the parties. The parties were **ORDERED** to submit briefs on the issue of the applicable standard of review. Defendants were provided fifteen (15) days from the date of the hearing to file their initial brief. Plaintiff was provided eleven (11) days to file a response, and Defendants were provided three (3) days thereafter to file a rebuttal.

*ii. Motion for Protective Order*

In their Motion for Protective Order, Defendants requested "[p]ermanent relief from discovery obligations extending beyond the administrative record pursuant [to] ERISA principles." Doc. 27 at 1. In accordance with the legal standards outlined herein, such broad-sweeping relief is not appropriate. At the hearing, Plaintiff requested the Court grant him limited discovery pursuant to four of the individual factors as set forth in Booth. If granted, such discovery would be permissible regardless of the standard of review eventually applied in this case. Plaintiff requested the following.

Firstly, he requested that discovery be permitted under the third Booth factor, addressing the adequacy of the materials considered in making the benefits decision, because Plaintiff had in his possession at least one relevant written statement from Plaintiff to Trustee Thomas Bell that was not contained in the administrative record provided. Secondly, Plaintiff requested discovery under the fourth Booth factor in order to determine if the reasons for Plaintiff's denial of benefits were consistent with earlier interpretations of the Pension Plan. Thirdly, Plaintiff requested discovery under the seventh Booth factor, regarding any external standards used in making the benefits determination, as the collective bargaining agreement, which would have been applicable to interpreting the term "trader craft," was not included in the administrative record. Lastly, Plaintiff requested discovery under the eighth Booth factor, relating to possible conflicts of interest, because there is speculation that the Pension Plan is financial unstable, and this instability may have played a role in denying Plaintiff benefits.

In considering Plaintiff's arguments, as well as the applicable legal standards, the Court ruled that **DISCOVERY IS APPROPRIATE** under either standard of review as to those areas argued for by Plaintiff. The Court, therefore, **DENIED** Defendants' Motion for Protective Order

and declines to enter such at this time. The Court **PERMITTED** discovery in the areas outlined by Plaintiff's counsel at the March 19, 2015 hearing, and the permitted discovery **SHALL** run concurrently with the parties briefing deadlines regarding the applicable standard of review.

The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 20, 2015